854 F.2d 900
 57 USLW 2123, 15 Media L. Rep. 2020
 The CINCINNATI GAS AND ELECTRIC COMPANY; the Dayton Power
and Light Company; Columbus and Southern Ohio
Electric Company, Plaintiffs-Appellees,
v.
GENERAL ELECTRIC COMPANY; Sargent and Lundy Engineers, and
the individual partners of Sargent and Lundy,
Defendants-Appellees,
The Cincinnati Post, a division of the E.W. Scripps Company;
Dayton Newspapers, Inc., d/b/a the Dayton Daily News and
Journal Herald; the Dispatch Printing Company d/b/a the
Columbus Dispatch, Non-Party Appellants.
 Nos. 87-3950, 87-4054.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 8, 1988.
Decided Aug. 18, 1988.
 
 Stephen Patsfall, John Flessa, Wood & Lamping, Cincinnati, Ohio, Bruce W. Sanford (argued), Baker & Hostetler, Washington, D.C., David L. Marburger, Caryn L. Zimmerman, Baker & Hostetler, Cleveland, Ohio, for non-party appellants.
 Robert G. Stachler, Cincinnati, Ohio, for CG & E.
 Stephen F. Koziar, Dayton, Ohio, for Dayton Power.
 Michael P. Graney, A. Joseph Dowd, John B. Shinnock, Columbus, Ohio, for Columbus & Southern Ohio Elec. Co.
 Dale A. Baich, amicus curiae, for Ohio Citizens for Responsible Energy, Inc.
 Before KEITH, and NORRIS, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 KEITH, Circuit Judge.
 
 
 1
 Appellants, The Cincinnati Post, et al., appeal pursuant to 28 U.S.C. Sec. 1291 from orders issued by the district court on September 14, 1987, October 5, 1987, and November 20, 1987, which appellants contend denied them their first amendment right of access to the summary jury trial conducted in the underlying action. For the reasons set forth below, we AFFIRM the district court.
 
 I.
 
 2
 This appeal arises out of a lawsuit involving the design and construction of the William H. Zimmer Nuclear Power Plant ("Plant"). The plaintiffs below, The Cincinnati Gas and Electric Company, The Dayton Power and Light Company and Columbus and Southern Ohio Electric Company (plaintiffs-appellees), were three Ohio electric utility companies that undertook jointly to build the Plant. In July of 1984, plaintiffs filed a lawsuit against the General Electric Company and Sargent & Lundy Engineers (defendants-appellees), an architectural and engineering firm, alleging breach of contractural duties and common law concerning the modification of the Plant. Plaintiffs later amended their complaint against the General Electric Company to add fraud and RICO claims.
 
 
 3
 From the outset of this litigation, the parties recognized the need for confidential treatment of much of the material that would be produced in discovery. As a result, the parties negotiated a comprehensive protective order, which the magistrate approved on December 6, 1984. See Joint Appendix at 243. This order provided varying degrees of protection for documents classified as "Confidential" or "Highly Confidential" by the party producing them. The order restricted the use by nonproducing parties of documents accorded either level of confidentiality to "the prosecution or defense of this action," or to other proceedings arising in connection with the Plant. Id. at 245. In addition, the order provided that any reference to "Highly Confidential" documents in motions, briefs, or other court papers or filings had to be accompanied by appropriate markings and separately filed under seal. Id. at 247.
 
 
 4
 On June 26, 1987, the district court issued an order requiring the parties to participate in a summary jury trial scheduled to commence on September 8, 1987.[1] The order included a provision closing the proceeding to the press and public. That provision stated that "[t]he proceedings, and all results thereof, shall be confidential, and shall not be disclosed other than to the parties, their attorneys, consultants and insurers. The jurors shall be appropriately instructed as to such confidential treatments." Joint Appendix at 222.
 
 
 5
 On September 4, 1987, appellants moved to intervene in the underlying action for the limited purpose of challenging the order closing the summary trial. On September 14, 1987, 117 F.R.D. 597, the district court denied appellants' motion to intervene, holding that they had no right to attend the summary jury trial. The court observed that "[t]he summary jury trial, for all it may appear like a trial, is a settlement technique." Joint Appendix at 185. Accordingly, the court held that the press had no first amendment right of access because: (1) there is no tradition of access to summary jury trials or to other recognized settlement devices, Joint Appendix at 180; and (2) public access "does not play a particularly significant positive role" in the functioning of the summary jury trial because "the proceeding is non-binding and has no effect on the merits of the case, other than settlement." Joint Appendix at 190.[2]
 
 
 6
 On October 5, 1987, the district court amended its September 14, 1987, order: (1) to incorporate an oral order issued on September 21, 1987, restricting communications between the mock jurors and the press and public until the case had ended; and (2) to add a provision requiring that "the list identifying prospective jurors on the panel for the summary jury trial, as well as those who actually served on the summary jury trial, shall remain sealed until the conclusion of this litigation." The court explained that "[t]o disclose [the mock jurors'] identity at this time may defeat the confidentiality of the jury's decision and would be inconsistent with our Order closing the proceedings to the public." Joint Appendix at 193-194.
 
 
 7
 Less than two months after the conclusion of the summary jury trial, the parties reached a settlement. On November 20, 1987, the district court issued an order approving the terms of the settlement and dismissing the action with prejudice. The court continued the gag orders and the sealing of the transcript and jury list, ruling that "all other Orders in this case concerning the confidentiality of documents and the summary jury trial remain in effect." Joint Appendix at 200-201.
 
 II.
 
 8
 The precise issue before us is whether the first amendment right of access attaches to the summary jury proceeding in this case. Appellants argue that the district court erred in refusing to allow them to intervene for the purpose of attending the summary jury trial proceeding. Appellants specifically argue that: (1) the summary jury proceeding is analogous in form and function to a civil or criminal trial on the merits, and therefore, the first amendment right of access which encompasses civil and criminal trial and pre-trial proceedings also encompasses the summary jury proceedings; and (2) public access would play a significant positive role in the functioning of the judicial system and summary jury trials. See Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) ("Press-Enterprise II"); Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); Brown & Williamson Tobacco Corp. v. F.T.C., 710 F.2d 1165 (6th Cir.1983), cert. denied, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984); Applications of National Broadcasting Co., Inc., 828 F.2d 340 (6th Cir.1987).
 
 
 9
 Appellees contend that the first amendment right of access does not apply to summary jury proceedings. Appellees argue that settlement proceedings are totally lacking in any tradition of public access, and that appellants exalt form over function in arguing that a summary jury trial is no different from a trial on the merits. See, e.g., Palmieri v. New York, 779 F.2d 861, 865 (2d Cir.1985) (citation omitted) ("[s]ecrecy of settlement terms ... is a well-established American litigation practice ..."). Appellees further argue that public access would not play a significant positive role in the functioning of summary jury trials. We agree with appellees' arguments and hold that the first amendment right of access does not attach to summary jury trial proceedings.[3]
 
 
 10
 The Supreme Court has in recent years decided a number of cases dealing with the right of access. See Gannett Co. v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979); Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) ("Press-Enterprise I"); Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) ("Press-Enterprise II ").
 
 
 11
 In Press Enterprise II the Court held that a qualified right of access applied in criminal proceedings to a preliminary hearing which was conducted before a magistrate in the absence of a jury. The Court held that the analysis of a first amendment claim of access involves two "complimentary considerations." First, the proceeding must be one for which there has been a "tradition of accessibility." Press Enterprise II, 106 S.Ct. at 2740 (citation omitted). This inquiry requires a court to determine "whether the place and process [to which access is sought] has historically been open to the press and general public." Id. (citation omitted). Second, public access must play a "significant positive role in the functioning of the particular process in question." Id. (citation omitted). Moreover, even if these elements are satisfied, the right of access is a qualified one and must be outweighed by a strong countervailing interest in maintaining the confidentiality of the proceedings. Id. at 2741 (citation omitted).
 
 
 12
 With regard to the first part of the test, we concur with the district court that "there is no historically recognized right of access to summary jury trials in that this mechanism has been in existence for less than a decade." Joint Appendix at 180. The summary jury trial is a device that is designed to settle disputes.[4] Lambros, The Summary Jury Trial, A Report to the Judicial Conference of the United States, 103 F.R.D. 461, 465 (1984). Settlement techniques have historically been closed to the press and public. See, e.g., Palmieri, 779 F.2d at 865. Thus, we find that "while the history of the summary jury trial is limited, there is general agreement that historically settlement techniques are closed procedures rather than open." Joint Appendix at 182.
 
 
 13
 Appellants argue that summary jury trials are structurally similar to ordinary civil jury trials, which have historically been open to the public. However, it is clear that while the summary jury trial is a highly reliable predictor of the likely trial outcome, there are manifold differences between it and a real trial. In a summary jury proceeding, attorneys present abbreviated arguments to jurors who render an informal verdict that guides the settlement of the case. Normally, six mock jurors are chosen after a brief voir dire conducted by the court. Following short opening statements, all evidence is presented in the form of a descriptive summary to the mock jury through the parties' attorneys. Live witnesses do not testify, and evidentiary objections are discouraged. Lambros, The Summary Jury Trial, 103 F.R.D. at 483-84. Thus, some of the evidence disclosed to the mock jury might be inadmissible at a real trial. See Spiegel, Summary Jury Trials, 54 U.Cin.L.Rev. 829, 830-31 (1986).
 
 
 14
 Following counsels' presentations, the jury is given an abbreviated charge and then retires to deliberate. The jury then returns a "verdict." Lambros, The Summary Jury Trial, 103 F.R.D. at 484. To emphasize the purely settlement function of the exercise, the mock jury is often asked to assess damages even if it finds no liability. Also, the court and jurors join the attorneys and parties after the "verdict" is returned in an informal discussion of the strengths and weaknesses of each side's case. Lambros, The Summary Jury Trial--An Alternative Method of Resolving Disputes, 69 Judicature 286, 289 (Feb.-Mar. 1986).
 
 
 15
 At every turn the summary jury trial is designed to facilitate pretrial settlement of the litigation, much like a settlement conference. It is important to note that the summary jury trial does not present any matter for adjudication by the court.[5] Thus, we find appellants' argument to be unpersuasive and therefore hold that the "tradition of accessibility" element has not been met.
 
 
 16
 The second criterion in the Court's public access analysis is whether access "plays a significant positive role in the functioning of the particular process in question." Press-Enterprise II, 106 S.Ct. at 2740. Appellants contend that public access would have community theraputic value because of the importance of the nuclear power and utility rate issues raised. We disagree.
 
 
 17
 "[I]t is necessary to consider whether the 'practice in question [furthers] an important or substantial governmental interest unrelated to the suppression of expression' and whether 'the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved.' " Seattle Times Co. v. Rhinehart, 467 U.S. 20, 32, 104 S.Ct. 2199, 2207, 81 L.Ed.2d 17 (1984). The summary jury trial can play a particularly useful role in facilitating the settlement of complex cases and is typically employed in cases that either will consume significant judicial resources if they proceed to trial, or that are not amenable to settlement through other techniques. However, where a party has a legitimate interest in confidentiality, public access would be detrimental to the effectiveness of the summary jury trial in facilitating settlement. Thus, public access to summary jury trials over the parties' objections would have significant adverse effects on the utility of the procedure as a settlement device. Therefore, allowing access would undermine the substantial governmental interest in promoting settlements, and would not play a "significant positive role in the functioning of the particular process in question." Press-Enterprise II, 106 S.Ct. at 2740.[6]
 
 
 18
 Appellants' claim of a public "right to know" has no validity with regard to summary jury trials. As the lower court correctly noted, the public would have no entitlement to observe any negotiations leading to a traditional settlement of the case, Joint Appendix at 186, and the parties would be under no constitutional obligation to reveal the content of the negotiations. Thus, the public has no first amendment right to access to the summary jury trial.
 
 
 19
 Appellants also argue that the summary jury trial should be open to the public because the facilitation of a settlement between the parties has a final and decisive effect on the outcome of the litigation. To support their argument, appellants rely on the Court's language in Press-Enterprise II, 106 S.Ct. at 2742-43, that preliminary criminal hearings must be open to the public because of their decisive effect on criminal cases. We disagree.
 
 
 20
 In contrast to the summary proceedings in this case, the proceeding at issue in Press-Enterprise II resulted in a binding judicial determination which directly affected the rights of the parties. Summary jury trials do not present any matters for adjudication by the court.[7] Thus, it is the presence of the exercise of a court's coercive powers that is the touchstone of the recognized right to access, not the presence of a procedure that might lead the parties to voluntarily terminate the litigation. Therefore, we find appellant's argument to be meritless.
 
 
 21
 Accordingly, for the reasons set forth above, we AFFIRM the judgment of Judge Arthur Spiegel, United States District Court, Southern District of Ohio.
 
 
 22
 GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge, concurring in part and dissenting in part.
 
 
 23
 The proceeding conducted in this case resulted in a settlement and a court decree. It resembled both settlement negotiations and a bench trial. While I join the majority in holding that the negotiations which led to the settlement of this case could properly be conducted in camera, I do not agree that the record can appropriately continue to be sealed after a settlement has been effected. I recognize that the view expressed above might impede some settlements, but I cannot reconcile complete suppression of this record with the First Amendment which our forefathers placed as the first condition for the founding of our nation.
 
 
 
 [1]
 The summary jury trial was developed in 1980 by United States District Judge Thomas D. Lambros. The primary purpose of the summary jury trial is the "settlement of disputes." Lambros, The Summary Jury Trial, A Report to the Judicial Conference of the United States, 103 F.R.D. 461, 465 (1984)
 
 
 [2]
 Moreover, Judge Spiegel emphasized that the summary jury trial was conducted with "the cooperation of the parties" and that his order closing the summary jury trial was in response to General Electric's substantial concerns regarding the potential lack of confidentiality. Joint Appendix at 184
 
 
 [3]
 Appellees also argue that appellants' motion to intervene was untimely and no reasonable explanation for the delay can be proffered. See Stotts v. Memphis Fire Department, 679 F.2d 579, 582 (6th Cir.), cert. denied, 459 U.S. 969, 103 S.Ct. 297, 74 L.Ed.2d 280 (1982). We need not entertain this issue because we are in agreement with the lower court that "the [substantive] issues raised ... [are] sufficiently serious to merit our consideration." Joint Appendix at 178
 
 
 [4]
 Courts have the power to conduct summary jury trials under either Fed.R.Civ.P. 16, or as a matter of the court's inherent power to manage its cases. See Link v. Wabash Railroad Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); see also Lambros, The Summary Jury Trial, A Report to the Judicial Conference of the United States, 103 F.R.D. at 469
 
 
 [5]
 Appellants' assertion that the summary jury trial is like an adjudication because the parties are compelled to participate is incorrect. The district court expressly stated that the proceeding was undertaken with the cooperation of the parties. Although the court denied appellants' motion to vacate the order setting the summary jury trial, it accommodated appellants' concerns to keep the proceeding confidential, thereby making it unnecessary for appellants to challenge the court's denial of the motion
 
 
 [6]
 Consistent with this rationale, courts have rejected first amendment claims of access, even though the information involved was of undeniable public interest. See Seattle Times, 467 U.S. at 31, 104 S.Ct. at 2206 (trial court permitted to prohibit public dissemination of information obtained in pretrial discovery notwithstanding that "there certainly is a public interest in knowing about respondents"); The Courier-Journal v. Marshall, 828 F.2d 361, 363 (6th Cir.1987) (newspapers had no first amendment right of access to discovery materials, despite the recognition that "proceedings [were] of intense public concern")
 
 
 [7]
 Summary jury trials do not affect the parties' right to a full trial de novo on the merits. "If one or both parties feel the result of the jurors' deliberations is grossly inequitable, the right to proceed to a full trial is in no way prejudiced." Lambros, The Summary Jury Trial, 103 F.R.D. at 482