**Cynthia Wallace HUME, Plaintiff,**

v.

**M & C MANAGEMENT, et al., Defendants.**

**No. C87-3104.**

United States District Court, N.D. Ohio, E.D.

Feb. 15, 1990.

Avery S. Friedman, Cleveland, Ohio, for plaintiff.

Sheldon Stein, Cleveland, Ohio, for defendants.

## ORDER

BATTISTI, Chief Judge.

This Fair Housing case was filed on November 25, 1987. On February 13, 1989, following unsuccessful settlement discussions, the parties moved to invoke an experimental settlement procedure, a "summary jury trial in accordance with the procedure established by Judge Lambros of this court." Joint Motion at 1.

The Motion must be denied. In discussing the foundation for Summary Jury Trials, Judge Lambros states that the Summary Jury Trial "is firmly rooted in the Federal Rules of Civil Procedure [Rules 1 and 16] ... and the court's inherent power to manage and control its docket."[1] However, there is no authority in law for using persons as summary jurors, summoned pursuant to 28 U.S.C. § 1866(a) (1982). Therefore, such a procedure is not permissible in the federal courts.

Those versed in the novelties of alternative dispute resolution are no doubt familiar with the Summary Jury Trial.[2] A Summary Jury Trial is conducted before six persons drawn at random from the Court's jury pool, normally used for petit juries, who are summoned under threat of fine or imprisonment, pursuant to 28 U.S.C. § 1866(g) (1982). The proceeding consists of opening and closing arguments with an overview of expected trial evidence. No direct testimony is taken from witnesses. The summary jury's "verdict" is non-bind-

---

1. More specifically, Judge Lambros views Summary Jury Trials to be within the courts pretrial powers pursuant to Rule 16 and the courts inherent power to manage and control its docket, in light of Rule 1 which states that the Federal Rules be construed "to secure the just, speedy, and inexpensive determination of every action," Fed.R.Civ.P. 1. *Summary Jury Trials and Other Alternative Methods of Dispute Resolution,* 103 F.R.D. 461, 469 (1984) (Lambros, C.J.).

2. The conceptual forerunner of the Summary Jury Trial was the "mini-trial," now a private dispute resolution mechanism. Edwards, *Alternative Dispute Resolution: Panacea or Anathema?,* Harv.L.Rev. 668, 673 n. 16 (1986).

ing. A Summary Jury Trial, therefore, is a settlement tool, a lever.

It may be true that, in some cases, a Summary Jury Trial catalyzes the settlement process.[3] However, its dominant feature, that six persons be convened solely for the purpose of facilitating settlement, is unauthorized by the legislature.[4]

The Congress has spoken clearly and definitively: except for advisory juries, the only purpose for which a citizen may be required to serve as a juror, and thus the only authority vested in the federal district courts to summon a juror, is to sit on a "grand" or "petit" jury.[5] The first section of the Jury Selection and Service Act of

---

3. The overall efficacy of the Summary Jury Trial remains in question, however. *See, e.g.,* Posner, *The Summary Jury Trial and Other Methods of Alternative Dispute Resolution: Some Cautionary Observations,* 53 U.Chi.L.Rev. 366 (1986) (based on proposed criteria for evaluating procedural reform, raising questions about Summary Jury Trials). In my own view, the Summary Jury Trial is an unenlightened step backwards. It is reminiscent of a prior legal era, dominated by procedural mechanisms which stifled the candid exposition of the merits. For instance, the non-binding nature of Summary Jury Trials presents great temptation to strategically withhold crucial evidence and argument. Furthermore, when forced, a party might view it as an unacceptable burden or bludgeon. As the Second Circuit has aptly noted, "Rule 16 of the Fed.R.Civ.P. was not designed as a means for clubbing the parties—or one of them—into an involuntary compromise." *Kothe v. Smith,* 771 F.2d 667, 669 (2d Cir.1985); *see also Strandell v. Jackson County, Ill.,* 838 F.2d 884, 887 (7th Cir. 1987) (quoting *Kothe* ).

4. Not only is the summoning of jurors for summary jury duty unauthorized by the legislature, but the use of jurors as summary jurors could compromise the integrity of the jury system. Judge Posner states:

[i]f word got around that some jurors are being fooled into thinking they are deciding cases when they are not, it could undermine the jury system.

Telling the jurors after they have delivered the summary verdict that the verdict is not legally binding is only a partial anodyne for my concern.... The jurors are still being fooled; and they are learning that juries sometimes make decisions and at other times simply referee fake trials. As word spreads, the conscientiousness of jurors could decline....

Posner, *supra* note 3, at 386–87.

Because some of Judge Lambros' colleagues "believed that serving at summary jury trials might affect the jurors' judgments at the full trial," these judges "had been excusing jurors who had served at summary jury trial from serving at subsequent full trials." M.D. Jacoubovitch & C. Moore, *Summary Jury Trials in the Northern District of Ohio* 23 (Federal Judicial Center 1982). Prompted by a case in which twelve such dismissals had to be made "to guard against prejudicial error," Judge Krupansky asked the Clerk of Courts to eliminate "any prospective juror who has participated in a sum-

mary court proceeding ... from any panel requested to serve in [his] courtroom in both criminal and civil cases." *See* Memorandum from Judge Krupansky to the Clerk of Courts (Apr. 10, 1980) (regarding Jurors Who Participate in Summary Trials). Additionally, Judge Krupansky "suggested that a separate independent jury panel be maintained for the purpose of participating in summary court proceedings and that such individuals be isolated from regular jury panels that are drawn for purposes of formal court proceedings," noting that "the latter procedure may also result in a discrimination of individuals selected to serve as jurors." *Id.* Judge Krupansky concluded by "suggest[ing] that a uniform procedure be discussed and adopted to cope with the serious problems that are being created in drawing jury panels." *Id.*

Of course, while precluding summary jurors from service as regular jurors alleviates one harm to juries caused by Summary Jury Trials, it creates another, the interruption of the randomness of jury selection.

In addition to threatening the integrity of the jury system, the Summary Jury Trial experiment ignores the special considerations which should be present when experimenting with human beings as a "means to the end of obtaining information." *Experimentation in the Law: Report of the Federal Judicial Center Advisory Committee on Experimentation in the Law* 41 (Federal Judicial Center 1981). In the report, the authors state that "[a]ny research or experiment that involves human subjects uses those subjects as instruments of the research, as means to the end of obtaining information" and that "[u]sing persons as means conflicts with the principle of respect for persons ... when the individual subjects do not consent." *Id.*

5. Judge Lambros opines, in his handbook for Summary Jury Trial proceedings, that Fed.R. Civ.P. 39(c) provides the theoretical underpinning for the use of jurors on a summary jury. Jacoubovitch & Moore, *supra* note 4, at 41. Rule 39(c), enacted pursuant to the Rules Enabling Act, in regard to the long established use of advisory juries in bench trials, permits the use of jurors for service on an advisory jury. According to to Judge Lambros, "the clear purpose behind the Rule ... is to give the court *and the parties* the opportunity to utilize a jury's particular expertise and perception when a case demands those special abilities." *Id.* (emphasis added).

1968, 28 U.S.C. § 1861 (1982), states, in part:

> It is further the policy of the United States that all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States, and shall have an obligation to serve as jurors when summoned for that purpose.[6]

This statute imposes no obligation on citizens of the United States to serve as summary jurors.[7] To imagine that Congress meant the phrase "petit juries" to include a summary jury is to disregard the fundamental distinctions between these bodies. A petit jury is "[t]he ordinary jury for the trial of a civil or criminal action...." *Black's Law Dictionary* 768 (5th ed. 1979). A summary jury, on the other hand, is assembled for settlement purposes only and not for the trial of a civil or criminal action.[8] Due largely to this distinction, the Sixth Circuit held that the the the First Amendment right of public access does not apply to Summary Jury Trials.[9]

■ In addition to the difference in purpose between a Summary Jury Trial and a real trial, a summary juror hears no direct testimony, and, therefore, does not pass on the credibility of witnesses, one of the primary functions of a present-day petit jury.[10] A summary jury listens only to lawyers' arguments, which, unless corroborated, are never to be regarded as trial evidence. In addition to the lack of live witnesses, evidentiary objections are discouraged, thus further increasing the likelihood that evidence disclosed to the summary jury would be inadmissible at a real trial.[11] Most importantly, unlike an ordinary jury verdict, a summary jury "verdict" is not binding.[12]

However, Judge Lambros' interpretation of Rule 39(c) is over broad. Rule 39(c) is an authorized exception to 28 U.S.C. § 1861 (1982), *see infra* p. 509, for the narrow purpose of aiding the judge. *See* J. Moore & J. Lucas, 5 *Moore's Federal Practice* ¶ 39.10[1], at 39–40 (2d ed. 1985) ("[T]he [advisory] jury acts merely as an aid to the judge...."); *see also id.* at 39–38 (*quoting Vosburg Co. v. Watts,* 221 F. 402, 408 (4th Cir.1915)) ("[I]n equity [an advisory] verdict was only "the discretionary right of the court to have its 'conscience enlighted'...."). Thus, Rule 39(c) allows a judge to have the assistance of a jury in deciding cases, but it does not provide the basis for giving parties such assistance in order to reach settlement. As Judge Posner stated:

> [T]he summary jury is not an advisory jury. It does not advise the judge how to decide the case, but is used to push the parties to settle. It is therefore outside the scope of rule 39(c) of the Federal Rules of Civil Procedure, which deals with advisory juries.
> Posner, *supra* note 3, at 385.

Thus, until legislation similar to Rule 39(c) is enacted to permit the use of jurors for Summary Jury Trials, such a procedure remains unauthorized in law. In fact, two bills mentioning Summary Jury Trials in the context of setting out procedures to promote the use of alternative dispute resolution devices have been referred to the Committee on the Judiciary, H.R. 473, 100th Cong., 1st Sess. 5, (1987), and S. 12038, 99th Cong., 2d Sess. 3, (1986); however, neither bill has been enacted into law.

6. Similarly, in §§ 1862, 1863(a), 1863(b)(8), 1865(b)(1), 1866(a) and 1871 of the Jury Selection and Service Act of 1968, Congress refers specifically to grand and petit juries, and to no others.

7. *See* Posner, *supra* note 3, at 385–86 (in questioning judges' power to convene summary juries, stating that nothing in the "Jury Selection and Service Act of 1968 ... empower[s] federal judges to summon jurors to serve as mediators").

8. *See Cincinnati Gas and Electric Co. v. General Electric Co.,* 854 F.2d 900, 904 (6th Cir.1988). The court found unpersuasive the argument that a Summary Jury Trial is "structurally similar to ordinary civil jury trial," and found, instead, that a Summary Jury Trial is "[a]t every turn ... designed to facilitate pretrial settlement of the litigation...." *Id.* The court emphasized the "purely settlement function" of a Summary Jury Trial by noting that "the mock jury is often asked to assess damages even if it finds no liability. Also, the court and jurors join the attorneys and parties after the 'verdict' is returned in an informal discussion of the strengths and weaknesses of each side's case." *Id.*

9. *Id.* at 904–05.

10. In fact, Judge Lambros specified that "a case should not be assigned to summary jury trial if ... the credibility of a witness is a critical issue in the resolution of the dispute." Jacoubovitch & Moore, *supra* note 4, at 3.

11. *See Cincinnati Gas and Electric Co.,* 854 F.2d at 904.

12. Clearly, therefore, a summary jury composes a different entity than the jury referred to in the

■ These distinctions are so sharp and tear so deeply into the legitimate functions of today's juries that a summary jury can not possibly fall within the meaning of the phrase "petit juries." Federal judges, therefore, have no authority to summon citizens to serve as settlement advisors, just as they would have no authority to summon citizens to serve as hand servants for themselves, lawyers or litigants.[13] Persons should be pressed into service of the United States as summary jurors, thereby depriving them of their liberty, only by plain, unambiguous and constitutional enactment of the Congress,[14] not by inference, or Procrustean application of summary juries into the well-established law regarding "petit" and "advisory" juries.[15] Since Congress has granted no authority to summon citizens for Summary Jury Trials, questions arising under the Fifth and Thirteenth Amendments to the United States Constitution would also seem to be implicated.

Accordingly, the Joint Motion is overruled. Until Congress authorizes the federal courts to summon citizens for service other than for grand and petit juries, the result obtained through this Order seems to be the only one permissible in law.

IT IS SO ORDERED.

---

Seventh Amendment of the United States Constitution. Under the Seventh Amendment, "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States...." U.S. Const. amend. VII. Since a summary jury renders only a non-binding "verdict," it is the antithesis of the jury contemplated by the Seventh Amendment. There is no indication that Congress, in the Jury Selection and Service Act of 1968, intended its references to petit juries to mean anything different from the concept espoused in the Seventh Amendment.

13. Only the use of petit jurors as advisory jurors is authorized through the Rules Enabling Act. *Supra* note 5.

14. In his discussion concerning the lack of express authority for summoning jurors to serve as summary jurors, Judge Posner notes that jury service is "a form of conscription" and states that "judges should be cautious about instituting new forms of involuntary servitude, mild as this one is." Posner, *supra* note 3, at 386.

15. It is the institutionalization by the federal courts of the use of summary juries which is objectionable in law. If judges wish to promote the use of voluntary privately paid fact-finders, such as the "jurors" used in mini-trials, they run no risk of misusing the jury system established by law.