**UNITED STATES, Plaintiff,**

v.

**Willie Edward EXUM, Defendant.**

**No. 1:89 CR 146.**

United States District Court,
N.D. Ohio, E.D.

Aug. 30, 1990.

Marilyn Bobula Asst. U.S. Atty., Cleveland, Ohio, for plaintiff.

Donald Krosin and Debra Huges, Office of Federal Public Defender, Cleveland, Ohio, for defendant.

ORDER

BATTISTI, District Judge.

In this criminal case, citizens were called from the qualified jury wheel, Cleveland, Eastern Division to serve as petit jurors. As part of the Jury Selection Plan in the Northern District of Ohio (the "Plan"), citizens drawn from the qualified jury wheel are required by some judges, through the clerk, to serve as summary jurors in summary jury trials. The Jury Selection and Service Act and the Federal Rules of Civil Procedure provide only for the use of citizens as grand, petit and advisory jurors. *See* 28 U.S.C. § 1863(a) and Fed.R.Civ.Pro. 39(c). Similarly, there is no authority for the use of jurors as summary jurors in the Plan for the Northern District of Ohio, and thus no approval of the practice by the Circuit Council as required by law. 28 U.S.C. § 1863 (requiring approval of the Plan by the Circuit Council). Since there is no authority in the law for calling citizens to summary jury service, *Hume v. M. & C. Management,* 129 F.R.D. 506, 510 (N.D.Oh. 1990), calling citizens from the qualified jury wheel to summary jury service may impermissibly alter the jury selection process in the Northern District of Ohio, and thus jury selection in the instant case.

Accordingly, after potential jurors were called, but prior to voir dire, an Order was issued expressing my concern regarding the jury selection process, staying proceedings pending a resolution of the matter and requesting Counsel to investigate, submit briefs, and thereafter, to argue the issues presented. Order of June 12, 1990; Transcript at XX. It must now be determined: (1) whether the use of citizens drawn from the qualified jury wheel for summary jury service impermissibly alters the jury selection process in the Northern District of Ohio and thus, the jury selection in the instant matter; and, (2) if so, the most efficient and least intrusive remedy.

## A. *The Jury Selection Process in the Northern District of Ohio*

Drawn from the master wheel, the Cleveland qualified jury wheel for civil and criminal cases consists of approximately four-hundred names. Once the qualified jury wheel drops to two-hundred names, it is replenished.

Upon request by a judge, a panel of prospective jurors is drawn from the qualified jury wheel and directed to the court room. These jurors may be: (1) called to the jury box, used to serve as jurors, and subsequently discharged; (2) called to the jury box, challenged ("challenged jurors") and returned to the qualified jury wheel; or (3) not called to the jury box ("leftover jurors") and returned to the jury assembly room. Initially, summary jury panels were only drawn directly from the qualified jury wheel. Since April, 1990, however, leftover jurors have also been selected for summary jury duty.

This use of leftover jurors creates a startling distortion in juror utilization statistics. By empaneling these leftovers for summary jury duty, the court appears to reach a higher level of juror utilization; i.e. fewer jurors are left in the pool at the end of the day. Generally, however, those empaneled for summary jury duty do not serve immediately, and in fact, may not be given any specific date for actual service. It is somewhat unclear why these jurors should be considered as utilized, but that question need not be addressed at this time.

If a summary jury trial is cancelled, the summary jurors scheduled to serve are returned to the qualified jury wheel. Potential jurors who serve as summary jurors are not returned to the qualified jury wheel, but are, instead, discharged from jury service.

Since April, 1990, thirty-seven summary jury panels have been sworn. At this time, only eight of those thirty-seven summary jury trials have gone forward. Thus, approximately two-hundred potential jurors have been diverted from petit jury service to summary jury service. Many of these are in a limbo of sorts, still awaiting the

selection of a date for the summary jury trials for which they are to sit. But for their assignment to summary jury service, these individuals would have remained in the qualified jury wheel.

Thus, the jury selection process in the Northern District of Ohio improperly involves calling citizens from the qualified jury wheel for service not only as grand jurors and petit jurors but also as summary jurors.

### B. *Judicial Intervention*

Judicial intervention is appropriate when the jury selection process is not in compliance with the law. In particular, pursuant to 28 U.S.C. § 1867(d), "[i]f the court determines that there has been a substantial failure to comply with provisions of [the Act] in selecting the petit jury, the court shall stay the proceedings pending the selection of a petit jury in conformity with [the Act]." A party need not actually be prejudiced by an impropriety to argue successfully a lack of compliance with the statute. *See United States v. Okiyama*, 521 F.2d 601, 603 (9th Cir.1975). Certainly, the court must balance the significance of any impropriety against the time and effort expended in trying a case and reaching a verdict. However, in the instant matter, the court is considering the perceived impropriety *prior* to any trial proceedings, aside from calling jurors from the qualified jury wheel. Since little time or effort has been expended in trying the instant matter, there is no reason for the court to overlook what it perceives as an intentional deviation from the jury selection process as laid out in the Act and the Plan.

■ The Government argues that it has no standing to challenge the propriety of assigning summoned jurors to serve in summary jury trials as it suffers no injury in fact from the diversion of jurors to summary jury service and, alternatively, because the matter can be administratively resolved by the Sixth Circuit Judicial Council. Both arguments are unpersuasive. Having perceived an impropriety in the jury selection process, the court ordered the parties to address the merits of that

concern. That summary jurors are not involved in criminal trials is irrelevant; all jurors, whether they are summary jurors or criminal petit jurors, are called from the qualified jury wheel, as part of the jury selection process in the Northern District of Ohio.

### C. *Noncompliance with the Act and the Plan*

■ Federal judges have no authority to summon jurors to serve as summary jurors. *Hume v. M & C Management*, 129 F.R.D. 506 (N.D.Oh.1990).

As the court stated in *Hume*, there is no authority in the Act, the Plan or case law for summoning citizens to summary jury service. *Hume*, 129 F.R.D. at 508–09. This district court is vested with authority to "devise and place into operation a written plan for random selection of *grand and petit jurors*." 28 U.S.C. § 1863(a) (emphasis added). The language of the Plan is similar. Federal Rule of Civil Procedure 39(c), enacted pursuant to the Rules Enabling Act, provides that in "all actions not triable of right by jury the court ... may try any issue with an *advisory jury* ...." Fed.R.Civ.P. 39(c) (emphasis added). While the circuit courts have ruled on the legality of matters pertaining to summary jury proceedings, they have not expressly addressed whether district courts have the authority to call potential jurors to serve as summary jurors. Thus, the Act and the Plan authorize the utilization of citizens for service only on grand, petit and advisory juries. Any argument that a summary jury resembles these expressly authorized juries, and therefore, comes under the scope of or was contemplated by such authorization, is meritless.

Clearly, summary jury service is not the equivalent of petit jury service, not to mention grand jury service, either in function or purpose; thus, calling individuals from the qualified jury wheel to serve as summary jurors is not comparable to calling them to petit jury service. *Hume*, 129 F.R.D. at 509. In *Cincinnati Gas & Electric Co. v. General Electric*, 854 F.2d 900, 904 (6th Cir.1988), in which the Sixth Circuit held

that the First Amendment presumption of public access to trials did not apply to summary jury trials, the court found unpersuasive the argument that summary jury trials are "structurally similar to ordinary civil jury trials" and emphasized the "purely settlement function" of a summary jury trial. In *Strandell v. Jackson County*, 838 F.2d 884, 886 (7th Cir.1986), the Seventh Circuit held that federal district courts may not require litigants to participate in summary jury trials, although the court specifically stated that "[w]e are *not* asked to determine the manner in which summary jury trials may be used with the consent of parties." Like the Sixth Circuit in *Cincinnati Gas & Electric*, the court distinguished a summary jury from a regular jury, noting that the stated purpose of summary jury trials is "to motivate litigants toward settlement by allowing them to estimate how an actual jury may respond to their evidence," 838 F.2d at 884. In *Hume v. M & C Management*, 129 F.R.D. 506, 509 (N.D.Oh.1990), this court outlined several distinctions between summary jury service and petit jury service such as the nonbinding nature of summary jury verdicts.

The parties analogize summary jurors to advisory jurors, arguing that authority for summoning citizens to summary jury service can be drawn from or is contemplated by Federal Rule of Civil Procedure 39(c) which expressly authorizes the trial of issues with an advisory jury. This argument is unpersuasive. As this court noted in *Hume v. M & C Management*, 129 F.R.D. at 508 n. 5, advisory juries and summary juries are fundamentally distinct. Therefore summary juries are not covered by Rule 39(c). *See also* Posner, *The Summary Jury Trial and Other Methods of Alternative Dispute Resolution: Some Cautionary Observations*, 53 U.Chi.L.Rev. 366, 385 n. 27 (1986); Maatman, *The Future of Summary Jury Trials in Federal Courts: Strandell v. Jackson County*, 21 John Marshall Law Review 455, 478 (1988). Contrary to the suggestion of the parties, the lack of an express prohibition against calling jurors to serve as summary jurors should not be interpreted as authorization.

Since the Act and Rule 39(c) expressly authorize the courts to call or conscript for grand, petit or advisory jury service, this means that citizens can be conscripted for those services and for *no other services*. *Cf. Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 2009, 104 L.Ed.2d 593 (1989) (interpreting provision of the Federal Tort Claims Act " 'against the United States' " to mean "against the United States and *no one else*") (emphasis supplied). Second, where there is experimentation with the law, especially longstanding experimentation as in the case of the summary jury trials, the law should not be read expansively. It has been noted regarding summary jury trials, that "[a]lthough express authorization from the federal rules is not always necessary, a lack of clear authority is cause for hesitation when experiments are be undertaken." Maatman, *The Future of Summary Jury Trial in Federal Courts Strandell v. Jackson County*, 21 John Marshall Law Review, 455, 477 (1988). Likewise Judge Posner noted that "lack of clear authorization is a reason for hesitation in sensitive areas" and described summary jury service as "an enlargement of the use of the jury" and called jury service a "form of conscription." Posner, *The Summary Jury Trial and Other Methods of Alternative Dispute Resolution: Some Cautionary Observations*, 53 U.Chi.L.Rev. 337, 386 (1986) (*quoted in* Maatman, at 477 n. 105); *See also Taylor v. Oxford*, 575 F.2d 152, 154 (7th Cir.1978) (*quoted in* Maatman, at 477 n. 105) ("innovative experiments may be admirable, and considering the heavy case loads in the district courts, understandable, but experiments must stay within the limitations of the statute"). The courts should be particularly careful when experimentation directly makes use of human subjects. *See Hume*, 129 F.R.D. at 508 & n. 4 (quoting *Experimentation in the Law: Report of the Federal Judicial Center Advisory Committee on Experimentation in the Law*).

Furthermore, the legislature has twice failed to pass legislation legitimizing summary juror trials: H.R. 473, 100th Cong.,

1st Sess., 133 Cong.Rec.H. 157 (1987) (Alternative Dispute Resolution Promotion Act of 1987); S. 2038, 99th Cong., 2d Sess., 132 Cong.Rec.S. 848 (1986) (Alternative Dispute Resolution Promotion Act of 1986). Senator Biden recently introduced the "Civil Justice Reform Act," S. 6473, Cong.Rec. (May 17, 1990) which provides that "a civil justice expense and delay reduction plan developed and implemented under this chapter shall include provisions applying ... principles and guidelines of litigation management and cost and delay reduction" including "authorization to refer appropriate cases to *alternative dispute resolution* programs that.... the court may make available, including mediation, minitrial, and summary jury trial." S. 2648, 101st Cong., 2d Sess. § 473(a)(6), (b), 136 Cong. Rec. 6475 (1990) (emphasis added). Interestingly, alternative dispute resolution is an oft-used misnomer as applied to summary jury trials. As summary jury trials are non-binding, there is no alternative resolution as there would be in a process such as binding arbitration.

The legislature's failure to expressly authorize summary jury trials despite several opportunities to do so is especially significant when viewed in the light of the Seventh Circuit's statement that "the ease and speed with which the Federal Rules of Civil Procedure can be amended by those whom Congress entrusted with the responsibility for doing so should make federal judges hesitate to create new forms of judicial proceedings in the teeth of existing rules." *Henson v. East Lincoln Township*, 814 F.2d 410, 414 (7th Cir.1987) (*quoted in* Maatman, at 477 n. 105).

The Plan for this judicial district has not been amended to provide authorization for drawing summary jurors from the qualified jury wheel, and therefore, the Circuit Council has not granted any such authorization. Accordingly, the jurors called in the instant matter, and necessarily drawn from the qualified jury wheel, emerged from a jury selection process involving a practice for which there is no basis in law.

## D. *Impermissible Alteration of the Jury Selection Process*

■ In their briefs and oral arguments, the parties suggest that judicial intervention in the jury selection process is merited only when there exists a practice tending to result in a panel of jurors unrepresentative of a fair cross section of the community. In enacting 28 U.S.C. § 1867, the legislature was primarily concerned with jury selection practices having such an effect. *See* H.Rep. No. 1076, Jury Selection and Service Act of 1968, U.S.Code Cong. & Admin.News 1968, pp. 1792, 1794 (indicating that "substantial" referred to percentage deviations in a jury from the structure of the community). Thus, courts have held that "two important principles underlying the Act were random selection from voter lists and exclusion on the basis of objective criteria only...." *United States v. Nelson*, 718 F.2d 315, 318 (9th Cir.1983). Similarly, in *United States v. Gregory*, 730 F.2d 692, 699 (11th Cir.1984), the court held that a substantial violation of the Act will be found only when two important general principles are frustrated: (1) random selection of juror names and (2) use of objective criteria for determination of disqualifications, excuses, exemptions, and exclusions. In contrast a mere "technical" deviation from the Act does not constitute an impermissible deviation. *Gregory*, 730 F.2d at 699.

However, it can not be the case that the use of jurors for services other than those enumerated in the Act, namely serving as grand, petit and advisory jurors, should be considered and excused as a mere "technical" deviation from the Act. Intentional deviations are not permissible simply because they may not alter randomness. After all, "jury service is ... a form of conscription." Posner, *The Summary Jury Trial and Other Methods of Alternative Dispute Resolution: Some Cautionary Observations*, 53 U.Chi.L.Rev. 366, 386 (1986). Certainly, for example, utilizing potential jurors to wash the judges' cars could not be condoned as a mere technical deviation from the Act. While the use of jurors as summary jurors may seem less severe to some, it nonetheless constitutes

an unauthorized use of jurors, and, in my view, an egregious deviation from the Act.

Intentional deviations from the statutory jury selection process cannot be allowed when they are perceived prior to a trial, before significant resources have been expended in trying a case. Therefore, the court cannot in the instant matter condone, prior to trial, the fact that jurors called to serve in this matter have emerged from a jury selection process involving a use of jurors, namely for summary jury service, that is clearly unauthorized by the Act, the Plan and case law and, although no opinion is asserted on this issue, may be unauthorized by the Constitution and violate certain of its provisions. Accordingly, the jury selection process in the Northern District of Ohio from which the panel in the instant matter emerged has been impermissibly altered.

## E. *Remedy*

█ In order to resolve this matter as expeditiously as possible and in the least intrusive manner, the clerk is instructed to draw four hundred names from the master wheel and to place them in the qualified jury wheel. From this qualified jury wheel, jurors shall be called to try the instant matter. Of the jurors making up the qualified jury wheel, none may be used to serve as summary jurors either before or after a panel for the instant matter is called.

Accordingly, all criminal and civil jury trials pending before me are suspended until further order of this court. Because this matter involves an intentional and impermissible jury selection practice, "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A).[1]

IT IS SO ORDERED.

1. It seems notable that the use of summary jury trials bears a resemblance to the eighteenth century system of successive jury trials. At that time, the court system was "horizontal." The "superior" and "inferior" courts each exercised trial court jurisdiction, and each empaneled their own juries. Thus, successive jury trials were held in the same case. *See* W. Ritz, *Rewriting the History of the Judiciary Act of 1789* 27, 35 (1990). Of course, this horizontal system, with its successive jury trials, was abandoned with the adoption of the United States Constitution (*see* art. III & amend. VII) and the Judiciary Act of 1789.

The summary jury trial, originally conceived and promoted as a tool for complex and protracted cases, is now regularly used for routine litigation. There are no objective standards for the initiation or utilization of the process. If the Federal Rules of Civil Procedure and Federal Rules of Evidence became applicable then the

summary jury trial would increasingly replicate the petit jury process. As such it would be a step backward towards the days of successive jury trials. On the other hand, if such rules are not made applicable, then it is unclear what the proper rules should be or how they should be formulated.

After ten years, the summary jury trial exists as an "experiment", commenced without controls, carried on without standards, evaluated without criteria, and developing without direction. Besides placing an added hardship on the parties, it remains unclear what the process has to offer over a traditional settlement conference between the parties and the judge. Also unclear is the effect of the summary jury trial on public and juror perception of—or respect for—the legal system. These, however, are questions best left for another day, and perhaps another forum.