**David DAY, et al., Plaintiffs,**

v.

**NLO, INC., et al., Defendants.**

**No. C–1–90–67.**

United States District Court, S.D. Ohio, W.D.

Jan. 20, 1993.

149

Thomas Joseph Kircher, Kircher, Robinson, Cook, Newman & Welch, Paul M. De Marco, Allen Paul Grunes, Waite, Schneider, Bayless & Chesley Co, Cincinnati, OH, for David Day.

Thomas Joseph Kircher, Kircher, Robinson, Cook, Newman & Welch, Allen Paul Grunes, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, for remaining plaintiffs.

William Howard Hawkins, II, Frost & Jacobs, John Stephen Wirthlin, Sr., Kevin T. Van Wart, Beirne & Wirthlin, Cincinnati, OH, Herbert L. Fenster, McKenna, Conner & Cuneo, Washington, DC, David M. Bernick, Kirkland & Ellis, Chicago, IL, for NL Industries, Inc.

William Howard Hawkins, II, Frost & Jacobs, John Stephen Wirthlin, Sr., Kevin T. Van Wart, Douglas James Kurtenbach, Beirne & Wirthlin, Cincinnati, OH, David M. Bernick, Kirkland & Ellis, Chicago, IL, for NLO Inc.

## ORDER DENYING DEFENDANTS' MOTION TO RECONSIDER

SPIEGEL, District Judge.

This matter is before the Court on the Defendants' Motion for Reconsideration of the Summary Jury Trial Ruling (doc. 322) and the Plaintiffs' Response (doc. 328). The Defendants have informed the Court that they do not intend to reply. At the Defendants' request, we have given this matter expedited consideration.

The issue presented by these pleadings is whether this Court can compel the Defendants to participate in a summary jury trial which is open to the public.

### BACKGROUND

The Feed Materials Production Center ("FMPC") located in Fernald, Ohio is the subject of this litigation, as well as previous litigation before this Court. At the FMPC, National Lead of Ohio ("NLO") was involved in certain aspects of developing and manufacturing nuclear weapons for our country's armed services.

In a previous case, the residents around the FMPC brought suit alleging that NLO had exposed them to radiation and other hazardous materials. *In re Fernald,* Case No. C–1–85–149 (S.D.Ohio) (J. Spiegel). The residents claimed that they suffered emotional distress, personal injury, and property damage by virtue of being a neighbor of the FMPC. The Defendants in that case steadfastly refused to discuss settlement. In light of the prospect of a lengthy and complex trial on the merits, this Court decided to hold a summary jury trial in an effort to promote settlement. The Defendants argued in that case that the proceeding should have been closed to the public. As will be discussed in more detail later in this Order, we disagreed with the Defendants' argument and opened the summary jury trial to the public. Following the summary jury trial, the two parties settled the *In re Fernald* case for $78 million.

The next year, the workers and the frequenters at the FMPC, along with their families, brought this lawsuit. The Plaintiffs are claiming harm in the three forms: (1) an increased risk of disease; (2) emotional distress in light of the increased risk of disease; and, (3) disease itself. This Court held a seven week statute of limitations trial in this case in the fall of 1991. The jury in that trial found that some of the Plaintiffs were time-barred while others could continue in the litigation. In light of the jury's determination, the Court certified a class.

In an effort to promote settlement of this case, the Court has ordered the parties to participate in a summary jury trial beginning February 16, 1993. At the Final Pretrial Conference for the Summary Jury Trial, the Court informed all counsel that the summary jury trial would be an open proceeding.

### DISCUSSION

The Defendants now ask for reconsideration of this Court's ruling concerning the summary jury trial.

#### Summary Jury Trials

■ Crowded dockets, the increasing expense of litigation, and the trauma of trial for the parties have forced the courts to develop innovative techniques to settle cases. One method this Court has used with great success is the summary jury trial. A summary jury trial is a mini-trial designed to give the attorneys and their clients an indication of what they may expect at a full-blown trial. However, a summary jury trial verdict is not binding upon the parties.

■ At a summary jury trial, the parties exchange evidence before the trial has commenced. No evidence may be used which has not been exchanged with or disclosed to the other side. A jury is selected from the regular jury pool. Once the jury has been seated, both parties have an opportunity to present opening statements. Following opening statements, the parties summarize the evidence which would be presented at a trial on the merits. Finally, both sides make closing statements.

■ The jury is then charged with the law and asked to respond to a series of interrogatories. The jury is first asked its views regarding liability. In the second interrogatory, the jury is asked assuming the Plain-

tiffs were to prevail, how much should be awarded in damages. The Court asks the jury the second interrogatory in order for the parties to gauge the potential damages that might result from a trial on the merits. Finally, the jury is asked who wins and for how much. *See* S. Arthur Spiegel, *Summary Jury Trials*, 54 U.Cin.L.Rev. 829 (1986).

### The Power to Order Summary Jury Trials

■ Substantial disagreement exists as to whether a court should have the power to compel a party to participate in a summary jury trial. *Compare* Jennifer O'Hearne, Comment, *Compelled Participation in Innovative Pretrial Proceedings*, 84 Nw.U.L.Rev. 290 (Fall 1989) (contending that compelled participation in summary jury trials undermines the atmosphere of fairness and justice in a court) *with* Anne C. Morgan, Note, *Thwarting Judicial Power to Order Summary Trials in Federal District Court: Strandell v. Jackson County*, 40 Case W.Res. L.Rev. 491 (1989–90) (courts should have the power to mandate a summary jury trial because summary jury trials have proved to be successful settlement techniques). Nevertheless, in this circuit, federal district courts have the power to compel a party to participate in a summary jury trial. *Cincinnati Gas and Elec. Co. v. Gen. Elec. Co.*, 854 F.2d 900, 903 n. 4 (6th Cir.1988), *cert. denied*, *Cincinnati Post v. Gen. Elec. Co.*, 489 U.S. 1033, 109 S.Ct. 1171, 103 L.Ed.2d 229 (1989).[1]

### The Power to Open and Close Summary Jury Trials to the Public

■ This Court considered the issue of whether a summary jury trial could be kept open in *In re Fernald*, Case No. C–1–85–149 (S.D.1985). In that case, the Defendants ar-

gued that the summary jury trial should be closed, because of the potential effects on trial of adverse publicity created from the summary jury trial. We reasoned in that case as follows:

> [w]e conclude that determining whether a summary jury trial should be open or closed to the press is within our managerial discretion. In the instant case, we decline to close the summary trial. We agree with plaintiffs that it would be impracticable to do so given the large number of plaintiffs involved. Realistically, it is unlikely that developments in the trial could be kept from the press. Further, this is not a strictly private dispute.

*In re Fernald*, Case No. C–1–85–149, at 2 (S.D.Ohio May 24, 1989). These same considerations dictate that this case should not be closed to the public.[2]

The United States Court of Appeals for the Sixth Circuit has permitted federal district courts to close summary jury trials to the public. In *Cincinnati Gas*, 854 F.2d at 900, various newspapers filed a motion to intervene in the litigation involving the Zimmer Nuclear Power Plant. Specifically, the newspapers challenged the power of this Court to close a summary jury trial. The *Cincinnati Gas* court held that because a summary jury trial is a settlement technique, rather than a trial on the merits, a federal district court could close a summary jury trial. *Id.* at 903–05.

If a federal district court holds the greater power to close a summary jury trial, then a federal district court must have the lesser power to keep open a summary jury trial. Closing a summary jury trial raises First Amendment concerns; whereas, opening a summary jury trial does not.

---

1. We note that the United States Court of Appeals for the Seventh Circuit created a split in the circuits by forbidding compulsory summary jury trials. *Strandell v. Jackson County*, 838 F.2d 884 (7th Cir.1987). The United States Supreme Court has yet to address this issue. *But see* Fed.R.Civ.P. 16(c)(7) and Proposed Rule Fed. R.Civ.P. 16(c)(9) (adding language "such as the appointment by the court of one or more persons, who may be persons otherwise summonsed for service as jurors, to evaluate claims and defenses of the parties").

2. The Defendants do not contend that the class representatives should be barred from attending the summary jury trial. Given that the class representatives, representatives for the Defendants, and all counsel will be present at the summary jury trial, the media undoubtedly would cover the summary jury trial by asking for reports from those present in the courtroom. Although this Court could issue a gag order, we believe that it would be extremely difficult to enforce a gag order in light of the number of people involved and the public's interest in this case.

Nevertheless, the Defendants contend that an open summary jury trial will thwart their right to receive a fair trial on the merits. In essence, the Defendants contend that media coverage of the summary jury trial will pollute the jury pool for the trial on the merits.[3] Recent history shows that the Defendants can receive a fair trial in this community despite adverse publicity before trial. Prior to the statute of limitations trial, the Defendants were concerned about their ability to receive a fair trial in Cincinnati in light of past publicity about the FMPC. At the statute of limitations trial, however, the jury rendered a verdict largely in favor of the Defendants.

Consequently, we believe that through a detailed jury questionnaire and a lengthy voir dire, the Defendants can receive a fair trial on the merits in September 1993. However, if it appears to this Court during voir dire that the Defendants cannot obtain a fair trial in Cincinnati, then this Court would entertain a motion to try this case in another venue.

In sum, the summary jury trial is a settlement technique. It is *not* a trial on the merits. Federal district courts need the authority to foster settlement between the parties. *See* Fed.R.Civ.P. 16(a)(5) (granting the courts authority to compel attendance in order to facilitate settlement). Therefore, this Court has the power to keep a summary jury trial open to the public. *See Cincinnati Gas,* 854 F.2d at 900; *In re Fernald,* Case No. C–1–85–149 (S.D.Ohio May 24, 1989); Charles R. Richey, *Rule 16: A Survey and Some Considerations for the Bench and the Bar,* 126 F.R.D. 599, 609 (April 3, 1989) (Judge Richey disagreed with the Sixth Circuit's decision in *Cincinnati Gas,* noting that "the public and the press should be permitted access to summary jury trial proceedings."); Susan Tillotson, Note, *Constitutional Law/Alternative Dispute Resolution—Summary Jury Trials: Should the Public Have Access?—Cincinnati Gas & Electric Co. v. General Electric Co.,* 16 Fla.St.U.L.Rev.

1069, 1094 (1989) (although cited by the Defendants in support of their argument, this commentator actually contends that the trial court should have discretion in determining whether a summary jury trial should be open or closed); *Judges Should Have the Call on Use, Closure of Proceeding, Lambros Says,* 2 Alternative Dispute Resolution Report (BNA) 251, 252–53 (July 21, 1988) (contrary to the Defendants' assertion, Judge Lambros, the architect of the summary jury trial, holds his summary jury trials in open court and states that a trial judge "should have the call" in deciding whether to open or close a summary jury trial).

### *Keeping Open the Summary Jury Trial in this Case*

■ Furthermore, we believe that it would be especially inappropriate to close the scheduled summary jury trial in this case for two reasons. First, this is a class action. If the summary jury trial is successful and this case settles, then this Court would have to hold a fairness hearing under Fed.R.Civ.P. 23(e). The Court would have to find the settlement to be fair, adequate, and reasonable. *See Bowling v. Pfizer, Inc.,* 143 F.R.D. 141 (S.D.Ohio 1992) (J. Spiegel). Class members would have a right to object to the settlement at the fairness hearing. If the summary jury trial were closed, class members would be uninformed about the respective arguments of counsel and the verdict of the summary jury. Thus, objectors would have needless difficulty in evaluating the reasonableness of the proposed settlement.

Second, the Defendants in this case are being indemnified by the United States government. In other words, if a Judgment is rendered against the Defendants, the nation's taxpayers would have to pay it.[4] In light of this fact, the public has an interest in attending the summary jury trial, because the summary jury trial may cause this case to be settled. Similarly, class members have an interest in attending the summary jury

---

3. We agree with the Defendants that they have received adverse publicity in Cincinnati during the 1980's.

4. As discussed later in this Order, the attorney's fees and other costs incurred in defending this litigation are also being born by the government.

The government, however, probably would not be liable for punitive damages.

trial, because the summary jury trial may affect the disposition of their claims.

In light of these two reasons, we hold that the interests of the class members and the public outweighs the Defendants' desire to keep the summary jury trial closed.

## INTERLOCUTORY APPEAL

█ The Defendants have asked in the alternative that this Court's summary jury trial ruling be certified for interlocutory appeal. An interlocutory appeal should be granted when "there is substantial ground for difference of opinion and [from which] an immediate appeal ... may materially advance the ultimate termination of the litigation...." 28 U.S.C. § 1292 (1992). On this issue, we do not believe that there is a substantial ground for difference of opinion given this Court's decision in *In re Fernald* and the Sixth Circuit's decision in *Cincinnati Gas*. However, even if there was substantial ground for difference of opinion, interlocutory appeal would only delay the ultimate termination of this case.[5]

## ATTENDANCE AT THE SUMMARY JURY TRIAL

█ This Court always has ordered that individual clients attend the summary jury trial. When corporate clients are involved, we have ordered a top echelon officer to attend the summary jury trial. We require attendance at the summary jury trial by the decision makers, in order to allow them to see first hand the strength and weaknesses of their case, their chances of winning, their exposure, the cost of trial, and the time involved with a trial. S. Arthur Spiegel, *Summary Jury Trials*, 54 U.Cin.L.Rev. at 833–34; Thomas B. Metzloff, *Reconfiguring the Summary Jury Trial*, 1992 Duke L.J. 806, 817 n. 39 (in a summary jury trial the principals must have an opportunity to personally gauge their own arguments as well as their opponents); Thomas D. Lambros, *The Summary Jury Trial and Other Methods of Alternative Dispute Resolution: A Report to the Judicial Conference of the United States Committee on the Operation of the Jury System*, 103 F.R.D. 461, 470 (January 1984)

("clients' awareness of the jury's perception is as important as that of counsels' ").

Therefore, we order the attendance of the Plaintiffs' class representatives, and a top echelon officer of NLO and NLI. In addition, we request the presence of either the General Counsel of the Department of Energy ("DOE") or the Under Secretary of DOE who is responsible for this litigation. Although the DOE is not technically a party to this case, the DOE is paying the costs to defend this case and is also ultimately responsible for any nonpunitive damages in this case.

Previous courts have discussed the power of the trial court to require attendance at settlement proceedings:

> I do not accept the proposition that Rule 16 does not authorize a court to require the presence of parties with full authority to settle a case.... The clear intention of the recent amendments to the Federal Rules is to provide courts with the tools that are required to manage their case loads effectively and efficiently....
>
> By bringing their dispute to a court for resolution, the parties have invoked the use of an expensive public resource. It is a misuse of those resources for any party to refuse to meet personally with the opposing party or its counsel to attempt to resolve their disputes prior to trial.... It is always possible that exposure of the decisionmakers to the realities of a case will bring about a reevaluation of settlement posture on the part of those persons. Thus it is appropriate for a judicial officer to require that, particularly in complex and protracted litigation, the decisionmakers be made aware of all aspects of the case and the anticipated costs of its prosecution and defense by being personally present before the court.

*Lockhart v. Patel*, 115 F.R.D. 44, 46–47 (E.D.Ky.1987) (quoting *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 107 F.R.D. 275 (W.D.Wis.1985) (emphasis added in *Lockhart* has been deleted).

We have again requested the attendance of a DOE official at the summary jury trial,

---

5. We note that a trial on the merits in this case is scheduled to begin September 20, 1993.

because we are concerned that the decision makers at DOE may not be fully informed about this litigation. We have requested DOE's presence rather than ordered it, because this Court is unsure if it has jurisdiction to order the DOE to attend, and we do not wish to create a conflict between the executive and judicial branches, nor delay the ultimate resolution of this case.

Still, for the good of our country, we believe the DOE should send a high-level representative. The United States government has not maintained a consistent policy regarding the FMPC. On the one hand, Congress has recognized that workers at nuclear weapons plants may have increased health problems by recently passing legislation providing for medical monitoring. We expect this medical monitoring program will cost the taxpayers millions of dollars. Meanwhile, the DOE already has paid in excess of $6.6 million to defend this action with no final resolution in sight. *See* Plaintiffs' Request to File a Surreply, doc. 323, exh. A and B. If this case is tried on its merits, we expect that the legal bills ultimately to be absorbed by the taxpayers will total millions more. Furthermore, paradoxically, the DOE settled the neighboring residents' lawsuit, *In re Fernald*, Case No. C–1–85–149 (S.D.Ohio), yet refuses to discuss settlement with the workers and frequenters of the FMPC in the lawsuit now before this Court, when the workers and frequenters were in closer proximity to the FMPC than were the residents.

Therefore, as the *Lockhart* court reasoned, the decision makers in this case need to be made aware of all aspects of the case and the anticipated costs of its defense. Consequently, Defendants' counsel is ordered to provide a copy of this Order to the Secretary of Energy, the Under Secretary of Energy responsible for this case, and the General Counsel of DOE. In notifying these three individuals, the Defendants' counsel shall point out the section of this Order beginning on page ten, entitled "Attendance At The Summary Jury Trial." If these three individuals have not yet assumed their position in the new administration, Defendants' coun-

sel shall inform each of the individuals when they begin their service with the DOE.

### CONCLUSION

The summary jury trial in this case will be open to the public. We expect the Defendants to participate actively in the summary jury trial, just as every other defendant has done in summary jury trials before this Court.[6]

In addition, for the summary jury trial to be fully effective as a settlement technique, we are requiring the attendance of the class representatives, and top officers from NLO and NLI, and request the presence of either the General Counsel or the Under Secretary of DOE responsible for this litigation. The Defendants' counsel shall provide a copy of this Order to the Secretary of Energy, the Under Secretary of Energy responsible for this case, and the General Counsel of DOE.

SO ORDERED.

---

**6.** The Defendants state in their Motion to Reconsider that they will not actively participate in the summary jury trial if it is open to the public. If the Defendants choose this course of action, the Defendants and their counsel may be sanctioned accordingly. *See* Fed.R.Civ.P. 16(f).